**West Chicago Masonic Association v. Charles Cohn.**
94    333
r192s  210

1. LICENSE TO USE SPACE—*When to be Implied.*—A license from a city to use space underneath a sidewalk will be implied from long and continuous use, even though not expressly given.

2. SAME—*Duty of a Gratuitous Licensee.*—Where a person enjoys a

privilege peculiarly productive of benefit to him alone, the law requires of him the exercise of extraordinary care to see that no injury results from its use to other persons.

3. LICENSEES—*Of Spaces Underneath Sidewalks—Care Required of.*—Where the owner of a building upon the public sidewalk in the city of Chicago occupies by permission of the city the space under such walk for the storage of coal, etc., he is bound to exercise extraordinary care to see that no injury results to persons lawfully upon such sidewalk and he can not escape his liability by leasing the same for compensation to a tenant.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1901. Affirmed. Opinion filed March 29, 1901.

FRANCIS W. WALKER, attorney for appellant.

SMITH, HELMER, MOULTON & PRICE, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD delivered the opinion of the court.

Appellee fell into a coal hole, opening through the sidewalk in front of appellant's building, into a space under the sidewalk. The sidewalk was upon public property—one of the streets of Chicago. The space underneath the sidewalk was occupied for storage of coal and by toilet rooms for the tenant of the basement of the building that was leased by appellant to one who had occupied it several years. By the terms of the lease, the tenant covenanted that he received the demised premises in good order and condition, and would keep the same in good repair during the term, at his own expense. The lease contained no covenant by the appellant to make repairs or to keep the premises in a safe condition. The sidewalk extended from the street curb to the building line, and was of stone. The coal hole was provided with an iron lid or cover having a hook and chain appliance for holding it securely in place, but these were loose and unfastened at the time of the accident. The coal hole had been there since the building was erected in 1869, and the evidence tended to show it had become somewhat worn about its edges. The appellee,

passing on the walk, stepped upon the iron covering, and it tipped, and he fell into the hole, and received the injuries for which he sued.

The space underneath the sidewalk was in the exclusive use and occupancy of the tenant, and could only be reached by passing through the basement described in his lease. It was clearly appurtenant to the basement. The premises described in the lease were "the basement of the store known as number 200 West Randolph street, with appurtenances." The building belonged to the appellant, and was divided into stores and rooms, besides the basement, that was leased to other tenants.

There is substantially no dispute about the facts. The sidewalk and space underneath it were on public property —a city street—and had existed in substantially the same condition for many years. A license from the city to use the space will be implied, even though not expressly given. Nelson v. Godfrey, 12 Ill. 20.

The main question is as to the liability of the appellant, as owner of the building, under the facts as stated. The principal contention of appellant, as we understand it, is that if the owner of the building were ever responsible for the safety of the sidewalk, he ceased to be so after the making of the lease to the tenant and his taking possession under the lease, the sidewalk at the date of the lease being in a safe condition.

Upon that question the learned circuit judge who presided at the trial, instructed the jury, on his own motion, as follows:

"The court instructs the jury that public property can not be taken or used without compensation, for private use, with or without the consent of the public corporate authorities owning the same, without subjecting the private person or corporation using the same to a duty to use it in such manner as will not entail injury to or upon a citizen rightfully entering upon same, and using reasonable and ordinary care in so doing, and this duty the person or private corporation using such property can not, as a matter of public policy, escape by leasing the same for compensation to a tenant."

The precise proposition contained in the instruction has never been passed upon by our Supreme Court, so far as we are advised, but it seems to us to be sound law. It finds support in several New York cases. Trustees of Canandaigua v. Foster, 156 N. Y. 354; Irvin v. Fowler, 5 Robertson (Superior Court N. Y.), 482; Whalen v. Gloucester, 4 Hun, 24. See also, City of Chicago v. Robbins, 2 Black (U. S.), 418.

In Nelson v. Godfrey, *supra*, it is said:

"We are not prepared to admit that the defendant could, by reason of his ownership of the adjoining property, claim the absolute right to take up the sidewalk and extend his coal cellar under it. * * * Neither the public nor other individuals can derive any possible benefit from such a use of the sidewalk, but it is solely for defendant's benefit, and he must see to it that he does not endanger the safety of others. * * * It is a familiar principle that when one enjoys a privilege as a matter of favor, in consideration that he alone can enjoy the benefit, he is required to use extraordinary care in the exercise of the privilege."

Now, although appellant was not in actual occupancy of the vault under the sidewalk, it had assumed to lease it and was deriving rent from its use by its tenant, and such benefit accrued from the use of public property without compensation. We see no reason why appellant, thus deriving benefit, should not be subjected to the duty of care for the safety of the public, whose right to pass upon the sidewalk can not be questioned.

In such a case, the obligation to keep the walk in repair results from the benefit derived from the use of public property, and this obligation can not, as held in the instruction, be shifted by the owner upon the tenant. It is a duty imposed by law for the safety of the public, and, as held in one of the New York cases cited, the extent of the duty is measured by whatever public safety requires.

The question is one of much collateral importance and the writer of this opinion is not entirely clear concerning it. But we are unable to give any sufficient reason for overcoming the presumptions attaching to the correctness of the judgment.

We have carefully considered the cases cited by appellant, but do not find any of them to be sufficiently in point to need particular discussion. It might be added that there does not seem to be any good reason why the hole could not have been properly cared for from the outside, without access to the basement.

The wearing off of the edges of the hole, or the shelf of the stone pavement upon which the lid rested, was plainly shown by the evidence to be a thing easily observed or ascertained from the top of the sidewalk, and as much within the observation by the owner of the building from the outside, as by the tenant from underneath.

In our opinion the instruction was right, and there being nothing else observed by us of vital importance to be discussed, we affirm the judgment of the Circuit Court. Affirmed.